McCAIN, COMMISSIONER OF LABOR, *v.* HAMMOCK, CHANCELLOR.

4-6658                                        161 S. W. 2d 192

Opinion delivered April 27, 1942.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for petitioner.

*Aubert Martin, D. A. Bradham, Lamar Williamson, J. Emmett Gaughan, N. F. Lamb* and *Daggett & Daggett,* for respondent.

GREENHAW, J. Petitioners are respectively the Commissioner of Labor and the Director of the Employment Security Division in the Department of Labor of the State of Arkansas. They seek a writ of prohibition restraining respondent from proceeding further in three suits filed against them in the chancery court of Bradley county by Southern Lumber Co., Inc., Bradley Lumber Company and Arkansas Wood & Paper Products Corporation, firms engaged in manufacturing and processing of lumber, and all domiciled in Bradley county.

Petitioners allege that individually and officially they are domiciled in Pulaski county, and it is their duty to administer and enforce the provisions of Act 391 of 1941, being specifically charged with the duty of collecting taxes that are and were delinquent under Act 155 of 1937 as amended by Act 200 of 1939, the collection of such delinquent taxes, if not voluntarily paid, to be enforced in accordance with § 14 (e) of Act 391 of 1941.

Their petition further recites that on August 26, 1941, the three companies aforesaid filed in the Bradley chancery court bills in equity wherein each of them sought to restrain petitioners from enforcing the above acts, and from exercising the powers and duties bestowed upon them as officers of the state of Arkansas. Summonses issued by the clerk of the Bradley chancery court, directed to the sheriff of Pulaski county, were served upon petitioners at their office in the State Capitol. On September 6, 1941, petitioners filed a motion to quash the summons in each of said actions, on the ground that they were issued and served contrary to law. They also filed motions to dismiss the causes of action on the ground that the venue was not in Bradley county, because the defendants (petitioners here) are domiciled in their official capacities in the State Capitol.

On October 27, 1941, both motions were presented to the court and overruled, and petitioners were required to answer in said actions. Petitioners allege that the respondent, as judge of the Bradley chancery court, is about to proceed in said cases without authority of law, and that said court is without jurisdiction; that no legal summons has been or can be issued from said court upon said complaints, and no legal service has been or can be had on these petitioners; and that unless this court prohibits the respondent from proceeding further in said actions, petitioners will be required to litigate actions in the Bradley chancery court, which is without jurisdiction, and where the venue does not lie.

On August 21, 1941, the Director of the Employment Security Division certified to the Commissioner of Labor "Certificates of assessment of contributions levied by the Arkansas Employment Security Act" against the

three companies, copies of which were mailed to the respective companies, and which recited that the director assessed said contributions against each of them for the years 1937, 1938, 1939 and 1940. Each of the certificates stated the amount claimed to·be due, together with penalties and interest. The certificates purported to be executed under authority of § 14 (e) of Act 391 of 1941, and contained the statement: ''A copy of this assessment is being mailed or delivered· to said employer and at the end of ten days thereafter said assessment shall become *prima facie* correct, and if the contributions are not paid within said period of ten days the amount of said delinquent contributions will be certified to the clerk of the circuit court of the county wherein the employer is domiciled, or has a place of business, to be filed, as provided by law, and thereupon an execution will be issued against such employer, and placed in the hands of the sheriff for action as by law in such cases made and provided.''

On August 25, 1941, each of these companies filed in the Bradley chancery court its complaint, asking that the assessment be canceled, and that petitioners be restrained from attempting to enforce it. The allegations of the three complaints are the same with the exception of the names of the parties and the amounts involved.

The complaints alleged that the assessment was an illegal exaction, was based upon an arbitrary estimate of wages paid by persons with whom the company had dealt as independent contractors, and was in violation of provisions of the state and federal constitutions. These companies purchase timber, but do not engage in the logging business, in severing timber or in converting it into logs. They have paid all contributions due on their employees, and the assessments levied and certified against them were based upon wages paid to employees of independent contractors by the independent contractors, who agreed at the time of the enactment of the Arkansas Unemployment Compensation Law (Act 155 of 1937, as amended by Act 200 of 1939, which was repealed by Act 391 of 1941) to pay all contributions due upon wages due their employees. Compensation to the independent contractors was increased by the companies when this

law was first passed to enable them to pay the contributions due thereunder, and the threatened assessment would in most instances constitute a double assessment.

They further alleged that the assessments are not based upon wages actually paid to any of their employees, and, if collection of the assessed contributions were permitted, it would not benefit known individuals or definite employees, but most of it would go into a dummy account to the credit of unknown persons. None of the employees for whose benefit contributions are sought to be collected were ever employed by plaintiff companies, and none were actually paid by them, nor do their names appear upon their pay rolls. Defendants undertook to ascertain the amount of compensation paid to several independent contractors by examining plaintiffs' books with respect to acquisition of logs from the independent contractors and vendors, which estimate was made arbitrarily, unfairly, illegally, and in an excessive amount.

They allege that the amounts of the assessments were fixed prior to July 1, 1941, when Act 391 became effective, and were based upon rules, regulations and interpretations wrongfully made of the provisions of Act 155 of 1937, as amended by Act 200 of 1939, which was repealed by Act 391 of 1941, and the assessments therefore are illegally based upon laws which no longer exist; that the assessment is not made by authority of Act 391, but is in direct violation of the express provisions of § 2 (i) 5 of Act 391.

Plaintiffs invoke the provisions of § 13 of art. XVI of the constitution of Arkansas to protect themselves against the enforcement of an illegal exaction, and further invoke the ancient jurisdiction of equity to prevent a wrongful imposition of a cloud upon their properties, and allege that said assessments, their threatened collection, and threatened cloud upon the title of their properties constitute an illegal exaction. They pleaded estoppel and the statute of limitations as a complete bar, and prayed, among other things, that the defendants be enjoined from undertaking to enforce the alleged illegal exaction.

168

Petitioners contend that the Bradley chancery court is without power to proceed in the cases pending there for the reasons that no court has jurisdiction to hear and decide the issues that will arise on the complaints, for they seek to substitute a court procedure for a valid, adequate statutory procedure, and there has been and can be no lawful service of process upon petitioners because the venue of a local action is in Pulaski county.

Petitioners say they have proceeded under § 14 (e) of Act 391. The first and fourth paragraphs, which they claim are pertinent to the inquiry, are as follows:

"If any person, firm or corporation shall become delinquent in the payment of any contribution or interest or penalties required to be paid by this act, it shall be the duty of the director, when the amount of such contribution, interest and penalties is determined, either by the report of the employer or by such investigations as the director may have made, to assess the contributions, interest and penalties so determined against such delinquent employer, and to certify the amount of said contributions, interest and penalties to the commissioner, and mail or otherwise deliver a copy of said assessment to the delinquent employer. At the end of ten days thereafter, said assessment shall become *prima facie* correct, and the director shall certify the amount of said delinquent contributions, interest and penalties to the clerk of the circuit court of the county wherein the employer is domiciled or has a place of business and it shall be the duty of the clerk to file such certificate of record and to enter the same in the record of the circuit court for judgments and decrees under the procedure prescribed for filing transcripts of judgments by §§ 8440 and 8442 of Pope's Digest of the Statutes of Arkansas, 1937, and thereupon the said assessment shall have the force and effect of a judgment of the circuit court. Execution shall thereupon be issuable, at the request of the director, his agent or attorney, or any other employee of the Employment Security Division of the Department of Labor of the State of Arkansas, forthwith by the clerk of the circuit court, directed to the sheriff, who shall make a levy on any property, assets, or effects of the

employer against whom the contribution is assessed.
. . .

"Any aggrieved employer may have a review of the action of the director in making an assessment for contributions, interest, or penalties, by filing, within ten days after the filing of such assessment with said clerk, a petition for such review in the chancery court having jurisdiction, and all actions for such review shall have precedence on the docket of the court where filed and all appeals from the action of any court on such review shall be prosecuted within thirty days after the final order of the court is made.''

They also contend that under the second paragraph of § 14 (b) of Act 391, neither the Bradley chancery court nor any other court has power to grant the relief sought in the pending suits.

Section 14 (b) of Act 391 reads in part as follows: ''No suit, including an action for a declaratory judgment, shall be maintained and no writ or process shall be issued by any court of this state which has the purpose or effect of restraining, delaying, or forestalling the collection of any contributions under this act or substituting any collection procedure for those prescribed in this act.''

The respondent contends that notwithstanding the statutory procedure set out in § 14 (e) which permits aggrieved taxpayers to have the contribution assessment reviewed in the chancery court, and notwithstanding the provisions of § 14 (b), the Bradley chancery court has jurisdiction to grant the relief prayed in the three suits pending there, for the reason that the actions on the part of petitioners constitute an illegal exaction within the meaning of § 13, art. XVI, of the constitution of Arkansas, which reads as follows: ''Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.''

Respondent further insists that equity not only has the power to remove a cloud upon title, but that the Bradley chancery court has jurisdiction to prevent clouds

being placed upon the title to the properties of the plaintiff companies through the filing of the assessments, which under Act 391 become judgments when filed.

Many of the questions raised in the complaints in the Bradley chancery court involve questions in controversy between the petitioners and the companies against which assessments have been levied, and are not pertinent to the issues involved in the prohibition proceedings. The questions, therefore, for this court to decide are whether the statutory procedure provided in Act 391 is the exclusive remedy afforded a taxpayer, whether the Bradley chancery court has jurisdiction, and whether Bradley county is the proper place of venue.

There is no question but that the companies against which the delinquent contribution assessments were levied had the right, under Act 391, to wait until the certificate had been filed with the circuit clerk of Bradley county and then, within ten days thereafter, ask for a review as provided in the statute. The plaintiff companies elected to take another course for their protection. They invoked the jurisdiction of the chancery court of the county where they were domiciled, and where the alleged delinquent contributions arose. We have concluded that under the allegations of the complaints in these cases the Bradley chancery court did have jurisdiction, and that in so far as § 14 (b) is in conflict with § 13, art. XVI of our constitution, it is invalid.

This court has held that under this provision of our constitution a citizen and taxpayer has the right to invoke the jurisdiction of the chancery court to enjoin the collection of illegal taxes levied on his property. In the case of *Green* v. *Jones,* 164 Ark. 118, 261 S. W. 43, this court said: ''Section 13 of art. 16 of the Constitution of 1874 provides that any citizen of any county may institute a suit in behalf of himself and all others interested to protect the inhabitants thereof against the enforcement of any illegal exactions whatever. Under this section this court has uniformly upheld the jurisdiction of chancery courts, upon the application of citizens and taxpayers, to enjoin the collection of illegal taxes levied on their property.''

In a recent decision of this court wherein this constitutional provision was involved, the case of *McCarroll, Commissioner,* v. *Gregory-Robinson-Speas Company,* 198 Ark. 235, 129 S. W. 2d 254, 122 A. L. R. 977, the Commissioner of Revenues had notified plaintiff that "he intends to take action to collect" an alleged delinquent tax under the provisions of the Arkansas Income Tax Law, Act 118 of 1929. That act specifically prohibited recourse by the taxpayer to injunctive relief, and provided a statutory procedure for the relief of taxpayers. Pertinent parts of the act are:

"The collection of income taxes under this act shall not be stayed or prevented by any injunction, writ or order issued by any court; and no writ, order or process of any kind, staying or preventing the commissioner from taking any steps or proceedings in the assessment or collection of any income tax, whether the same is legally due or not, will be granted by any court or judge; but in all cases, the person against whom any income tax shall stand charged shall be required to pay the same, and thereupon shall have his remedy as hereinafter provided. . . .

"The person so paying said taxes under protest may, at any time within 30 days thereafter but not afterwards, bring an action against the commissioner for the recovery thereof in the chancery court of Pulaski county. . . ."

The taxpayer in that case did not wait and take the procedural route provided in the act, but sought and obtained an injunction in the Pulaski chancery court. In that case this court said: "The constitution of the State of Arkansas contains, we think, authority for equity jurisdiction in a case of this character in § 13, art. XVI. . . . The right of any citizen or taxpayer to go into a court of equity for relief was upheld in *Green* v. *Jones,* 164 Ark. 118, 261 S. W. 43. . . .

"We are of the opinion, therefore, that an individual has the right to go into a court of equity to enjoin the enforcement of any illegal tax or exaction and that this same right inures to the corporation, appellee, in the instant case, since a corporation is a person within the meaning of the equal protection and due process clauses

172

of the Fourteenth Amendment to the Constitution of the United States. . . .

"We, therefore, hold that the provisions of the Arkansas State Income Tax Law (Act 118 of the legislative session of 1929) which prohibit recourse by injunctive relief, are invalid as applied to appellee in the instant case and that the chancery court had jurisdiction to hear this cause and to grant the injunction."

This court in the above case did not hold that the income tax law of 1929 was wholly unconstitutional, but was invalid in so far as it affected that portion of the income of a domestic corporation derived from business transacted from sources outside the state, and that the taxpayer had the right, under § 13, art. XVI of the constitution, to prevent the collection of the illegal tax through injunctive relief, and was not compelled to follow the statutory procedure provided in the act.

In the instant case plaintiff companies, instead of waiting and pursuing the statutory remedy provided in the act, have elected, as did the taxpayer in the Gregory-Speas case, to invoke chancery jurisdiction for relief under § 13, art. XVI of the constitution, and also under the ancient, inherent jurisdiction of equity to prevent threatened invasion of property rights and placing of a cloud upon the title of their properties. It is our opinion that the Bradley chancery court had jurisdiction under the allegations of the complaints.

Petitioners further contend that if plaintiff companies have the right to proceed against them in courts of equity for injunctive relief, the venue is fixed by § 1397 of Pope's Digest in Pulaski county, where petitioners are officially domiciled.

This contention has caused us the most concern, but we cannot agree that petitioners cannot be brought within the jurisdiction of the Bradley chancery court under the service had. These are not suits against the state. Petitioners are attempting to obtain judgments against plaintiff companies which will necessarily become liens on all of their real estate in Bradley county. Not only are they attempting to obtain this judgment lien, but

by the certificate they have threatened that if the alleged delinquent taxes, penalty and interest are not paid, executions will thereafter be issued and levied upon the properties of these companies. If petitioners had not been stopped by the temporary injunction, they would have proceeded against properties of the plaintiff companies in Bradley county. We do not think that § 1397 of Pope's Digest prevents the exercise of jurisdiction by the Bradley chancery court, nor denies it the power to draw petitioners within its jurisdiction to grant the relief prayed for, under the allegations of the complaints.

Section 14 (e) of Act 391 has this provision: "Any aggrieved employer may have a review of the action of the director in making an assessment for contributions, interest, or penalties, by filing, within ten days after the filing of such assessment with said clerk, a petition for such review *in the chancery court having jurisdiction,* . . ." (Italics supplied.)

Whether it was or was not the intention of the Legislature to give the Pulaski chancery court exclusive jurisdiction in reviewing the actions of the director need not be determined in this case, nor do we determine whether the Legislature had such power. The act fixed the venue "in the chancery court having jurisdiction," and this, in our opinion, shows an intent that any chancery court in the state should have jurisdiction to review the acts of the director, depending upon the facts in each case.

If plaintiff companies had elected to wait until the assessment had been filed with the circuit clerk of Bradley county to have the resulting judgments reviewed under Act 391, petitioners would necessarily have been drawn into the jurisdiction of the Bradley chancery court, regardless of their official positions and domicile in Pulaski county.

It follows that venue is in Bradley county, where suits were instituted to prevent filing of the assessments and the resulting judgments, liens and clouds on the titles of properties of respective companies.

We think the following statement from the case of *Drinkhouse* v. *Spring Valley Water Works,* 80 Cal. 308,

174

22 Pac. 352, cited with approval in the case of *Cox* v. *Railway Company,* 55 Ark. 454, 18 S. W. 630, is applicable: "The injury is the same, whether threatened or completed, and the privilege accorded to the plaintiff to prevent the injury by injunction ought not to be held to give him the right to have the trial in a county where the cause would not have been triable if he had waited the completion of the injury before seeking redress."

Petitioners cannot be permitted to proceed in a course of action which will, if not prevented, result in a judgment and cloud upon the title to the real estate of plaintiffs in Bradley county, and then be heard to say that even though they are attempting to do this they are not subject to the jurisdiction of the Bradley chancery court, and can be sued only in Pulaski county.

The venue being in Bradley county, the summonses issued from that court and service thereof were valid under Act 21 of 1941, providing for state-wide service of process in local actions.

Having concluded that the Bradley chancery court had jurisdiction over the subject-matter and over the parties in the cases before it, the petition for writ of prohibition is denied.